UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURA CAMPOS and RICHARD MELBER,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF HACKENSACK, *et al.*,<br><br>    Defendants. | Civil Action Number:<br>2:09-03076<br>(CONSOLIDATED)<br><br>[Civil Action Number:<br>2:10-02568]<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

## MEMORANDUM OPINION

### I.  INTRODUCTION

On May 18, 2010, Plaintiffs, Officer Laura Campos of the Hackensack Police Department ("HPD"), and Officer Richard Melber of the HPD filed a federal civil rights action against Defendant HPD Chief of Police, C. Kenneth Zisa, and others, alleging that the Defendants violated their constitutional rights. On May 24, 2010, Plaintiffs filed a five-count Amended Complaint ("Complaint"). Defendants Captain Tomas Padilla and Defendant Captain Danilo Garcia each filed a motion to dismiss. A third motion to dismiss was filed by Defendants Chief Zisa and the City of Hackensack.

For the reasons elaborated below, Garcia's motion will be **GRANTED**, and he will be **TERMINATED** from this action; Padilla's motion will be **GRANTED**, and he will be **TERMINATED** from this action; and Zisa and the City of Hackensack's motion will be **GRANTED** in part, and **DENIED** in part.

### II.  FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT

The gravamen of the Complaint is that the Hackensack Chief of Police, Defendant Zisa, engaged in a pattern of extortion, against other HPD officers, i.e., Plaintiffs, seeking, among other things, political donations to further Zisa's political career and the political career of those allied with Zisa, including candidates for office within the Policemen's Benevolent Association ("PBA") of Hackensack and certain candidates for public office. It is further alleged that those who were not allied with Zisa, including those officers who

1

refused to donate to Zisa and his allies' political campaigns, were subject to retaliation and threats of retaliation in violation of Plaintiffs' First Amendment free speech and freedom of association rights.

In addition to the allegations of extortion surrounding the PBA election and elections to public office, Plaintiff Campos alleged that she was the victim of sexual harassment at the hands of Defendant Garcia. Campos alleges that Garcia has harassed her continuously from 2002 through 2010. She also alleges that in 2004 Garcia pressured her into rewriting a police report. Campos' report originally named the son of Kathleen Tiernan, Zisa's then girlfriend, as involved in a robbery. Garcia allegedly pressured Campos to change the report so not to implicate the son. Campos complied under the threat of retaliation, and Campos further asserts that Zisa and Garcia agreed to allow Garcia to harass Campos as a quid pro quo for Garcia's pressuring Campos to change her report. The Complaint characterizes this purported agreement as a conspiracy. Afterwards, in 2005, Campos complained to Zisa about Garcia's alleged sexual harassment. Zisa took no action.

The five-count Complaint is not a model of clarity and some of the counts interweave allegations involving the PBA election and elections to public office with the allegations involving sexual harassment and official misconduct involving the Tiernan report.

Count I is brought by Plaintiff Campos against Defendants Zisa and Padilla. It asserts a First Amendment claim involving the elections under 42 U.S.C. § 1983.

Count II is brought by Plaintiff Melber against Zisa. Like Count I, it also asserts a First Amendment claim involving the elections under 42 U.S.C. § 1983.

Count III is brought by Campos against Zisa, Padilla, and Garcia. It is a state civil conspiracy count making factual allegations in relation to the elections, and also in regard to sexual harassment and the Tiernan report. This count further alleges that Zisa and Garcia conspired with one another in allowing Garcia to harass Campos as a quid pro quo for Garcia's pressuring Campos to change her report.

Count IV is brought by Plaintiffs Campos and Melber against Zisa, Garcia, and the City of Hackensack. It is a Section 1983 claim making factual allegations in relation to the elections, and also in regard to sexual harassment and the Tiernan report. Like Count III, this count further alleges that Zisa and Garcia conspired with one another in allowing Garcia to harass Campos as a quid pro quo for Garcia's pressuring Campos to change her report.

Count V is brought by Campos against Zisa and the City of Hackensack. This is a New Jersey Law Against Discrimination claim ("NJLAD") making factual allegations in relation to sexual harassment, and the Tiernan report, and the alleged Zisa-Garcia conspiracy.

Padilla seeks dismissal of the counts against him, i.e., Count I and Count III.

Garcia seeks dismissal of the counts against him, i.e., Count III and Count IV.

Zisa and the City of Hackensack seek dismissal of Count III and Count IV in regard to the allegations involving sexual harassment, the Tiernan report, and the alleged conspiracy. These Defendants also seek dismissal of Count V, the NJLAD claim. Finally they seek an order striking paragraphs 55 to 58 of the Amended Complaint.

### III.   STANDARD OF REVIEW

The Defendants' motions to dismiss are brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

### IV.   ANALYSIS

*Chief Zisa and the City of Hackensack's Motion to Dismiss*. Zisa and the City of Hackensack are *not* moving to dismiss Count I and Count II, Section 1983 claims, brought by Campos and Melber, respectively, asserting a First Amendment claim involving the elections. Rather, these Defendants are seeking dismissal of Count III and Count IV in regard to the allegations involving sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy. These Defendants also seek dismissal of Count V, the NJLAD claim.

Campos' Count IV (a Section 1983 claim) is not a model of clarity. Count IV alleges a violation of Campos' constitutional rights. In regard to the allegations surrounding the Tiernan report, i.e., that Campos was pressured by Garcia to change the report on behalf of Zisa's girlfriend's son, it appears that these allegations do not involve any protected First Amendment freedom of speech or freedom of association rights.[1] Ostensibly, this is

---

[1] Plaintiff Campos filed her report in 2004. She brought this action in 2010 after "realizing for the first time that Chief Zisa and Defendant Garcia had conspired against her to alter [the] report," Opp'n Br. 14, and this was done to "Plaintiff's detriment." Plaintiff's position is puzzling. *See also* Opp'n Br. 23 (Plaintiff Campos "only recently . . . learned that the police report she was forced to write in 2004 by Garcia was

a report that Campos was required to file as part of the duties of her employment. The Court assumes that the filing of the police report in itself did not involve any freedom of association rights, and that Campos' drafting the report was not in itself the exercise of any free speech rights. The better view is that the drafting and filing of this report was akin to an internal workplace matter. Here, Campos, the public employee, was not speaking in her role as a citizen, but in her role as an employee. It would appear that such circumstances do not amount to a First Amendment claim. *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Connick v. Meyers*, 461 U.S. 138, 147 (1983). Because the alleged wrongdoing was not connected to the exercise of any constitutionally protected First Amendment rights, it would seem to follow that the alleged threats, harassment, and threats of harassment in connection with these events do not give rise to a First Amendment claim under Section 1983. Therefore, the allegations in Count IV in connection with the alleged sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy will be dismissed. But Count IV may proceed in regard to the allegations involving the PBA election, elections to public office, and alleged extortion in connection with those elections.

Count III and Count V are state causes of action for civil conspiracy and NJLAD respectively asserted by Campos with regard to Garcia's alleged sexual harassment, the alleged pressure brought to bear on Campos to change the Tiernan report, and Zisa's allegedly conspiring with Garcia on these matters. (Count III also asserts a civil conspiracy in regard to the PBA election and elections to public office.) With regard to the allegations involving sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy, these state law causes of action do not share a common nexus of operative fact with the remaining federal causes of action asserted in Counts I, II, and IV (each asserted under Section 1983). Those latter federal causes of action relate to Campos and Melber's First Amendment claims in connection with the PBA election and elections to public office. It is true that Campos is a Plaintiff in two of the federal causes of action, Counts I and IV, and in both state causes of action, Counts III and V. Likewise, Zisa is a Defendant in regard to each count. But there the overlap among the federal and state causes of action end. When the federal counts are heard, the evidence will be about the disputed elections; when the state counts are heard, the evidence will be about Garcia's alleged sexual harassment of Campos. The parties may be the same, and the alleged wrongdoing may be from the same period, but the theories of liability are completely

---

false."). At first blush, it would seem that Campos should have known the truth or falsity of her own report, quite apart from anything she may have discovered in 2010 about Chief Zisa. Likewise, if there were a victim involved in filing a false report, it would appear that the victim was the victim of the robbery (or its insurer), not the policeperson filing the less than complete report involving that robbery. Without considerable more detail, one must conclude that Campos' allegations are not plausible. *Twombly*, 550 U.S. at 557.

different and involve different evidence, different transactions, and different occurrences. In these circumstances, the Court concludes that Article III jurisdiction does not extend to the two state law causes of action. *See* U.S. CONST. art. III; 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 724-726 (1966). Count V will be dismissed without prejudice. The allegations in Count III in connection with the alleged sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy will be dismissed without prejudice. But Count III may proceed in regard to the allegations involving the PBA election, elections to public office, and alleged extortion in connection with those elections.

*Captain Garcia's Motion to Dismiss*. Garcia seeks dismissal of Count III and Count IV.

As explained, Count IV makes factual allegations in relation to the elections, and in regard to sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy. However, Plaintiffs factual allegations do not suggest that Garcia had anything to do with the alleged wrongdoing surrounding the PBA elections and the elections to public office. As to the factual allegations involving sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy, the Court has already explained that these allegations do not give rise to a First Amendment claim enforceable under Section 1983. *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Therefore, Count IV will be dismissed in regard to Garcia.

The only other claim against Garcia is Count III, state civil conspiracy. Count III is brought by Campos. Campos has another federal claim: Count I (involving the PBA election and elections to public office). But Count I is not brought against Garcia, and, as explained, there are no allegations against Garcia in regard to the disputed elections. (The allegations against Garcia relate to sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy.) Thus, with respect to Defendant Garcia, Count III does not share a common nucleus of operative fact with any remaining federal cause of action. In these circumstances, Count III will be dismissed against Garcia without prejudice. *See Gibbs*, 383 U.S. at 724-726.

*Captain Padilla's Motion to Dismiss*. Counts I and III are brought against Padilla. Padilla argues that Count III, the civil conspiracy count, fails because Plaintiffs failed to "allege any facts in support of the allegation an agreement existed among the Defendants, the essential nature and general scope of which was known to each person, to violate Plaintiff's [Campos'] constitutional rights." Plaintiffs failed to respond to this argument in their opposition brief. This constitutes waiver or abandonment of the count. *See Conroy v. Leone*, 316 Fed. Appx. 140, 144 n. 5 (3d Cir. Mar. 9, 2009) ("We find this undeveloped argument has been waived."); *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1002 n.1 (7th Cir. 2001) (holding that perfunctory and undeveloped arguments, and arguments unsupported by pertinent authority, are waived). Count III will be dismissed against Padilla.

As to both Count I and Count III, Defendant Padilla argues that the Amended Complaint

fails under *Twombly* and makes insufficient allegations personally connecting Padilla to the alleged constitutional wrongs, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The primary allegations the Complaint makes in regard to Padilla are:

> Prior to the [PBA] election, Chief Zisa and Captain Padilla made it openly known to all HPD officers that he [sic] desired Clouse to win the election and they must vote [for] Clouse to demonstrate their loyalty to them.

Compl. ¶ 45.

> During Plaintiff's Career, Plaintiff has been threatened with retaliation if she did not support Zisa's candidacies for State Assembly and other elected offices and other individuals that Defendant Chief Zisa supported, as well as for the candidacies of Defendant Tomas Padilla for County Freeholder.

Compl. ¶ 59.

> Defendant Padilla, acting through other police officers, threatened Plaintiff with retaliation if she did not support his candidacy for public office.

Compl. ¶ 93.

The allegations above lack specificity. Paragraph 45 does not explain how Zisa and Padilla made known their choice for the PBA election and how it was communicated to Plaintiffs. Paragraph 59 does not state who made threats and what sort of retaliation was threatened. Paragraph 93 does not explain what police officers acted as conduits for Padilla, nor does it explain what is the basis Plaintiffs have for believing the threats originated with Padilla. These allegations do not sufficiently connect Padilla to the alleged wrong. The allegations are formulaic, as opposed to specific factual allegations consistent with the requirements of *Twombly*. Count I, the Section 1983, claim fails.[2]

## V.   CONCLUSION

For the reasons elaborated above, Garcia's motion is **GRANTED**, and he is **TERMINATED** from this action; Padilla's motion is **GRANTED**, and he is **TERMINATED** form this action; and Zisa and the City of Hackensack's motion is **GRANTED** in part, and **DENIED** in part.[3]

---

[2] Defendant Padilla put forward a variety of other defenses which this Court has already rejected and addressed in detail in prior opinions in this (consolidated) action.

[3] Plaintiffs have put forward a proposed Second Amended Complaint as an exhibit to their opposition brief. Permission to submit an amended complaint must be sought by motion, and, the tradition in this District is that such motions are handled by a Magistrate Judge.

Count I is **DISMISSED** with prejudice against Padilla.

Count III is **DISMISSED** with prejudice against Padilla.

Count III is **DISMISSED** against Garcia without prejudice to being refiled in state court.

Count III's factual allegations involving official misconduct, sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy are **DISMISSED** without prejudice to being refiled in state court.

Count IV is **DISMISSED** against Garcia.

Count IV's factual allegations involving official misconduct, sexual harassment, the Tiernan report, and the alleged Zisa-Garcia conspiracy are **DISMISSED**.

Count V is **DISMISSED** without prejudice to being refiled in state court.

Defendants Zisa and the City of Hackensack's request to strike certain allegations is **DENIED**.

The Court notes that Counts I, II, III, and IV may proceed against Chief Zisa and Count IV may proceed against the City of Hackensack in relation to the factual allegations involving the PBA election, elections to public office, and alleged extortion in connection with those elections.

|  |  |
|---|---|
|  | s/ William J. Martini |
| **DATE: March 29, 2011** | **William J. Martini, U.S.D.J.** |